John W. McARTHUR, Jr., Plaintiff,

v.

TIME INSURANCE COMPANY;
Benfield Insurance Agency; and
James D. Weeks, Defendants.

Civ. A. No. 2:95–CV–74PS.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

June 28, 1995.

John M. Deakle, Curtis Ray Hussey, John M. Deakle, P.A., Hattiesburg, MS, for plaintiff.

Kenna L. Mansfield, Jr., Kelly D. Simpkins, Wells, Wells, Marble & Hurst, Jackson, MS, for defendants.

## MEMORANDUM OPINION

PICKERING, District Judge.

This matter comes before this Court on Plaintiff's Motion to Remand and Defendants Benfield Insurance Agency and James D. Weeks' Motion to Dismiss. Time Insurance Company filed no motion that is addressed in this opinion. The Court, having reviewed the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to wit:

### I. PROCEDURAL BACKGROUND.

Defendant Time Insurance Company issued a health insurance policy to the Plaintiff. While this policy was in force, Plaintiff was involved in an automobile accident and incurred medical expenses in the amount of $317.44 which Defendant Time paid under its policy. Plaintiff made a claim against the third party tortfeasor. While this claim was pending, Defendant Time Insurance Company advised Plaintiff and the insurance carrier

for the third party tortfeasor that Time was asserting a subrogation claim for the $317.44 it had paid in medical expenses. Time first claimed that Plaintiff's policy contained a subrogation clause. Time later admitted there was no subrogation clause, but contended it was entitled to equitable subrogation. Plaintiff settled his claim against the third party tortfeasor. After Defendant Time learned of this settlement, it again corresponded with Plaintiff requesting reimbursement and then corresponded with Plaintiff's attorney. Plaintiff denied that Defendant was entitled to assert any right of subrogation. Altogether, Defendant Time appears to have written twelve letters asserting its subrogation right, six to the insurance carrier of the third party tortfeasor, two directly to Plaintiff and four to Plaintiff's attorney.

On January 31, 1995, Plaintiff filed the instant suit against Defendants alleging that Defendants had attempted to assert an equitable subrogation interest which was not stated as a right belonging to Defendants in the contract of insurance entered into between the parties. In his Complaint, Plaintiff alleged that Defendants' attempts to assert this subrogation interest constituted: (1) fraud in the inducement; (2) tortious breach of contract; and (3) warranted the imposition of punitive damages.

On March 13, 1995, Defendants Bill Benfield Agency and James D. Weeks filed a Motion to Dismiss. These Defendants alleged that the claims against them should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and maintained that Plaintiff had fraudulently joined them as defendants for purposes of destroying diversity of citizenship. On April 3, 1995, Plaintiff filed a Motion to Remand contesting Defendants' claims that any defendants were fraudulently joined to destroy diversity of citizenship. This Court will rule separately on each of these motions.

## II. DEFENDANTS' MOTION TO DISMISS

### A. Standard of Review.

As stated above, Defendants Bill Benfield Insurance Agency and James D. Weeks filed their Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Certain affidavits and deposition excerpts were presented to this Court in the briefing of this Motion and Plaintiff's Motion to Remand. Rule 12(b) states in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b). *See, Young v. Biggers,* 938 F.2d 565, 568 (5th Cir.1991); *Triplett v. Heckler,* 767 F.2d 210, 211–12 (5th Cir.1985). Since evidentiary materials outside of the pleadings have been presented to and not excluded by this Court, this Court will treat Defendants' Motion as one for Summary Judgment. Regarding the notice requirements stated in Rule 12(b), the Fifth Circuit has stated that:

> Under Rule 56, it is not necessary that the district court give ten days notice after it decides to treat a Rule 12(b)(6) motion as one for summary judgment, but rather after the parties receive notice that the court could probably treat such a motion as one for summary judgment because it has accepted for consideration on the motion matters outside the pleadings, the parties must have at least ten days before judgment is rendered in which to submit additional evidence.

*Clark v. Tarrant Co., Texas,* 798 F.2d 736, 746 (5th Cir.1986) (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 392 (6th Cir.1975)). Defendants filed their Response to Plaintiff's Motion to Remand on April 21, 1995, and the parties have had considerably longer than ten days in which to submit additional evidence. Therefore, this Court finds that the notice requirement of Rule 12(b) has been met.

The Federal Rules of Civil Procedure, Rule 56(c) authorized summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, showed that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. Claim Against Bill Benfield Agency.

Plaintiff concedes that his claim against Bill Benfield Agency should be dismissed as there is no such entity. As a result, this Court finds that Defendants' Motion to Dismiss with prejudice should be and hereby is granted as to Defendant Bill Benfield Insurance Agency.

### C. As to the Claim of Fraud in the Inducement on the Part of Defendant Weeks.

Defendant Weeks asserts that there is absolutely no evidence to support Plaintiff's claim that he committed any acts which would form the basis for any of Plaintiff's claims. Plaintiff alleges that Weeks made fraudulent statements to Plaintiff which induced him to enter into the insurance contract with Time.

### 1. Plaintiff's allegations and evidence as to fraud on the part of Defendant Weeks.

█ Paragraph 8 of Plaintiff's Complaint reads in pertinent part:

That the individual defendants made oral promises to plaintiff that the policy conditions and provisions would be honored and carried out by the corporate defendant herein. The corporate defendant made written assurance in the form of exhibit "A" that the policy of insurance, which was the entire agreement between the parties, would be honored at a time when they knew or should have known that the oral and written promises made by the defendants would not be kept.

In his brief in support of his Motion to Remand and in opposition to Defendants' Motion to Dismiss, Plaintiff states the following:

The oral promises of Weeks are as contained above—that Time would honor and carry out the policy provisions contained in the policy, with the necessary inference being that Time would not attempt to assert claims or "rights" not contained in the policy. The promises of time are contained in the policy of insurance, and the averment that the policy constitutes "the entire agreement between the parties," complaint paragraph 8, likewise defines that the averments of plaintiff or that Time's attempts to collect subrogation funds under the equitable theory are impermissible because those "rights" are no where contained in the agreement between the parties.

Plaintiff's testimony, taken from his deposition, establishes that Plaintiff did not remember specifically any conversations which took place between Plaintiff and Weeks. Plaintiff stated that:

I don't recall anything word for word or verbatim. I am sure that, from past experience, I asked him what were the coverages, what were the deductibles, what was the co-insurance, what were the items covered under the policy, were there any items not covered under the policy. That's generally questions that I would ask about a health insurance policy.

Later in the deposition, Plaintiff stated:

I would say that I have no recollection of word for word conversation; just out of my general questions that I ask about health insurance policy, I am sure that these topics came up with Mr. Weeks and I—that I discussed earlier with you.

The basic gist of Plaintiff's substantive testimony is summed up by the following excerpts:

Q. Okay. You never had any discussions with him one way or the other about subrogation rights, have you?

A. No, sir. I didn't—I didn't ask those questions at the time we did the policy. I just asked the basic questions that I told you that we discussed earlier.

Q. Right. And what you were trying to find out from him back then was how much it costs, what they covered, what the benefits would be, basically?

A. That, and was it a strong company.

Q. Okay.

A. Were they good about paying claims?

Q. Okay.

A. Was it a company that he felt like I would want to deal with.

Q. Okay. And so far they have paid the claims that you have filed in accordance with what the policy provides; is that right?

A. The one claim that I have filed, yes, sir.

Q. Okay. So that gets me back then; what did he tell you that was not true?

A. He may have done so unbeknown to him, but he did tell me that they were a company that would stick to the policy, honor the policy. I am sure he did, or I wouldn't have—I've asked him that question and—

Q. Well, you say you are sure he did. That is getting back—

A. Yeah.

Q. —to that area that we talked about before. You think you most likely had a conversation like that but you have no specific recollection?

A. No, sir. I don't.

Q. Okay.

A. I am sure, and not quoting it to you verbatim, that we covered the rating of the company, were they good about paying claims, what's the deductible, what's the monthly payment, what's the co-insurance. I am sure we covered those areas, without being able to recite exact conversation to you.

\*　　\*　　\*　　\*　　\*　　\*

Q. Okay. Let me hand you a copy of an affidavit of Mr. Weeks that was attached as Exhibit 4 to a motion to dismiss that we filed on behalf of him. Can I get you to look at paragraph 3 on the first page? It

states, I have never discussed with Mr. McArthur or talked to him about whether Time has a legal right to subrogation with regard to his recovery of medical expenses from a third party tortfeasor. I believe that you have already told me that that is true. You never had any discussions with him along those lines, correct?

A. We didn't get into anything that technical. No, sir.

As to the assertion that Weeks made a statement that the contract between the parties would constitute the "entire agreement between the parties," Plaintiff stated, "[o]nce again, I don't recall verbatim any discussions, but this would be a general area that I would cover in my questioning. Yes, sir." Plaintiff also stated as to this alleged statement made by Weeks, "[w]ell, not—maybe not in those exact words. But I wouldn't be that nitpicky about it. He just said that they would issue your policy and they will stand behind the policy. They are a good company, they do what they say."

## 2. Requirement that Fraud be Alleged with Particularity.

Miss.R.Civ.P. 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[1] "As this court recently held at a minimum, rule 9(b) requires the plaintiff to allege 'the particulars of time, place and contents of the false representations ...'" *Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir.1994). The law is clear that fraud must be alleged with particularity. In his Complaint, Plaintiff has not alleged any "circumstances constituting fraud ... with particularity." Neither has Plaintiff produced any evidence of "circumstances constituting fraud ... with particularity."

## 3. Requirement that Plaintiff Must Demonstrate a Genuine Issue of Material Fact as to Whether Defendant Weeks Made a False Representation Knowing of its Falsity.

By Plaintiff's own admission, he clearly did not recall specific conversations between

---

**1.** Fed.R.Civ.P. 9(b) is identical to Miss.R.Civ.P. 9(b) and the results reached by this Court would be the same if either rule were applied.

himself and Weeks. This Court finds that the general areas that Plaintiff alleges were discussed between himself and Weeks do not amount to misrepresentations that would support a claim for fraudulent inducement under the facts present in this case.

■ For example, Plaintiff alleges that Weeks stated to him that Time was a good company which would honor claims and abide by the conditions of the policy. Plaintiff admits, however, that Time paid the claim under the policy. Plaintiff has not maintained in his Complaint nor in the motions or briefs filed before this Court that Defendant breached any specific provision of the insurance contract. Plaintiff merely maintains that Time breached the contract by attempting to assert a right which was not stated in the contract.

■ Plaintiff maintains that when Weeks asserted that Time would honor its policy, it was *reasonable* for Plaintiff *to infer* "that Time would not attempt to assert claims or 'rights' not contained in the policy." While that may or may not be true, it certainly cannot form the basis for a fraud claim. "[I]t is likewise well established that fraud is never presumed but must be proven by clear and convincing evidence." *Whittington v. Whittington,* 535 So.2d 573 (Miss. 1988) (citations omitted), overruled on other grounds, 612 So.2d 1092 (Miss.1992). *See also, Nichols v. Tri–State Brick and Tile,* 608 So.2d 324, 331 (Miss.1992). Parties to an insurance contract may assert legal rights which are not specifically spelled out in the insurance policy such as an insured's right to file suit for an insurer's bad faith refusal to pay benefits.

The Mississippi Supreme Court has clearly established what must be proved in order to establish fraud:

In order to establish fraud, the plaintiff must prove (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its

truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. *Franklin v. Lovitt Equip. Co., Inc.,* 420 So.2d 1370, 1373 (Miss.1982); *Anderson Dunham, Inc. v. Aiken,* 241 Miss. 756, 133 So.2d 527, 529 (1961).

As stated above, the Mississippi Supreme Court has held that a Plaintiff must show that a defendant made: (1) a representation; (2) that was false; and (3) defendant knew that the statement was false or knew that he did not know whether or not it was true or false. Plaintiff has provided no evidence that Defendant made any statement about subrogation. Hence, there is no genuine issue of material fact as to any of the following three elements which Plaintiff must prove by clear and convincing evidence in order to prevail under a fraud claim: (1) a representation; (2) that was false; or (3) that Defendant Weeks knew of its falsity or was ignorant of its falsity.

Defendant Weeks submitted an affidavit which contained the following paragraphs:

3. I have never discussed with Mr. McArthur or talked to him about whether Time has a legal right to subrogation with regard to his recovery of medical expenses from a third party tortfeasor.

4. I was not involved in any manner in Time's efforts to subrogate Mr. McArthur's recovery of medical expenses from a third party tortfeasor. I did not discuss or communicate Time's subrogation claim, either orally or in writing with ITT Hartford, or any of its agents or representatives, with Time, or any of its agents or representatives, or with Mr. McArthur, or any of his agents or representatives, including his attorneys.

5. I did not assist or help Time in any manner or form in its subrogation claim.

Weeks' affidavit is supported by Plaintiff's deposition testimony and by another affidavit presented to this Court of Cheryl Kreutzer, Time's representative who was responsible for attempting to assert Time's subrogation claim in this case. Again, there is no evidence to suggest that Weeks knew that Time would attempt to assert its subrogation claim or to show that he knew that he was ignorant of the truth on the issue. Again, there is

absolutely no evidence that Defendant made any statement about subrogation. If he made no representation, he could not have been ignorant of the fact, and he could not have intentionally misstated a fact, for he stated no fact.

As a result of this lack of making a representation or of knowledge on Weeks' part, even assuming that Weeks made the statements alleged by Plaintiff, the record is devoid of any evidence which would suggest that Weeks had any reason to believe that any of his statements were not true. In fact, based on Plaintiff's testimony concerning Time's payment of his benefits, it appears that Weeks was justified in his belief that his statements were true concerning Time's willingness to honor its policy.

The Mississippi Supreme Court has held that "the proof must establish an intent to deceive and this is indispensable in such action." *Anderson Dunham, Inc. v. Aiken*, 241 Miss. 756, 133 So.2d 527, 529 (1961). The record does not support a contention that Weeks had an intent to deceive Plaintiff. In fact, Plaintiff's deposition indicates the opposite conclusion. Plaintiff's deposition includes the following exchange:

> Q. Do you know of any facts that would support or tend to indicate that Mr. Weeks intentionally tried to defraud you in selling you this policy?
>
> A. No, sir.

Even if Defendant Weeks made the generalized statements attributed to him by Plaintiff, these statements would not support a claim of fraud for the further reason that they related to future conduct.

> Further, "[f]raud cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct." (citation omitted). A promise of future conduct may be found fraudulent only if the hearer proves that the speaker intended, at the time of the statement, to induce reliance by speaking a falsehood.

*Singing River Mall Company v. Mark Fields, Inc.*, 599 So.2d 938 (Miss.1992), at 945. There absolutely is no indication that Weeks intended to speak a falsehood.

Accordingly, Defendant Weeks' Motion to Dismiss should be granted.

## 4. No Genuine Issue of Material Fact Relating to Damages.

Lastly, on the issue of fraud, this Court finds that Plaintiff has failed to provide any evidence of any injury or damage which Plaintiff sustained as a result of Weeks' actions. Although in Plaintiff's Complaint, he alleges that he has suffered actual and compensatory damages as well as anxiety, worry, mental and emotional distress and other consequential damages, there is no evidence to support Plaintiff's allegations. In his deposition, Plaintiff testified:

> Q. And when you first became aware of it, ya'll looked at the letter and you looked at the policy and you were advised that Time can't assert that right?
>
> A. Yes, sir.
>
> Q. And from that point on you left it in the hands of your attorneys?
>
> A. Yes, sir.
>
> Q. And insofar as filing suit and you they sued, you left that up to your attorneys?
>
> A. Yes, sir.
>
> \*　\*　\*　\*　\*　\*
>
> Q. How were you harmed by Time's asserting that right?
>
> A. They asserted a right they didn't have.
>
> \*　\*　\*　\*　\*　\*

The witness:

Well, I wasn't—I wasn't physically damaged, was I?

Mr. Mansfield:

> Q. That's what I am asking. I wouldn't think, but I don't know that. You only know that.
>
> A. I did what I was supposed to do under the policy and they didn't and that is the extent of the damages. They didn't do what they were supposed to do.
>
> Q. Okay.
>
> A. I'm not—my arm's not broken and my leg's not broken.
>
> Q. It has not cost you financially, since you didn't pay the money back?

A. Right. They asked for me to do certain things under the policy, mainly pay the premium and then all I asked for them to do is do what the policy says, which they have (sic) haven't done.

Clearly, there is no evidence in the record to support Plaintiff's claim of damages as a result of Weeks' conduct.

For the above stated reasons, this Court finds that there is no genuine issue of material fact as to whether or not Weeks is liable for fraud, and Defendants' Motion to Dismiss, being treated as if it were a motion for summary judgment, should be and hereby is granted as to Plaintiff's claim for fraudulent inducement.

### D. Claim for Tortious Breach of Contract.

██ Plaintiff did not address his tortious breach of contract claim in regards to Weeks in his Brief in Opposition to Defendants' Motion to Dismiss. The record without contradiction shows that Defendants' Motion to Dismiss should be granted as to this claim as well.

Weeks was not a party to the insurance contract entered into between Plaintiff and Time. The record before this Court does not evidence any conduct on the part of Weeks which would constitute a breach of contract. Plaintiff only alleges that Weeks made certain representations to Plaintiff which induced Plaintiff to enter into the insurance contract. Those representations, if made, did not, in and of themselves, constitute a breach of contract.

As previously noted, Plaintiff has not cited any specific contractual provision which Weeks allegedly breached. Plaintiff maintains that Defendants' actions in asserting their subrogation claim, which was not provided for in the contract, constituted a breach of contract. This Court has already found that Weeks played no part in Time's decision to assert a subrogation claim. Weeks played no part in the actual assertion of that claim. In fact, there is no evidence to indicate that Weeks had any knowledge that Time would attempt to assert a subrogation claim.

As a result of the foregoing, this Court finds that there is no genuine issue of material fact as to the question of whether Weeks committed acts which would constitute a breach of contract and Weeks is entitled to judgment as a matter of law on this issue.

### III. MOTION TO REMAND

The standard of review in this Circuit on motions to remand is more stringent than the standard of review on motions to dismiss under Fed.R.Civ.P. 12(b)(6), which is the standard utilized by this Court in its analysis set out above. Having determined that Defendants Weeks and Benfield are entitled to have the claims against them dismissed, the Motion to Remand is moot. However, even if this Court had reached the question of remand, the evidence indicates that this is not an appropriate case for remand.

In *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990), the Fifth Circuit discussed the process to be used by a district court in ruling on fraudulent joinder claims. The Fifth Circuit stated:

In short, this Circuit treats fraudulent joinder claims as capable of summary determination. When determining fraudulent joinder, the district court may look to the facts as established by summary judgment evidence as well as the controlling state law. Hence, the trial court properly considered affidavits and depositions in ruling on the plaintiffs' motion to remand.

*Carriere*, 893 F.2d at 100. The *Carriere* court went on to state:

The standard for judging fraudulent joinder claims of this sort is clearly established in this Circuit: After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the non removing party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned.

*Id.* at 100–101 (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir.1981)); *Wheeler v. Frito–Lay, Inc.*, 743 F.Supp. 483–85 (S.D.Miss.1990).

Based on this Court's findings of facts and law discussed above in this opinion, this

Court finds that Plaintiff has no possibility of recovery against Defendants Bill Benfield Insurance Agency or James D. Weeks. Since there is complete diversity between the remaining parties in this case, this Court finds that Plaintiff's Motion to Remand should be and hereby is denied.

## IV. CONCLUSION

 This is a classic case for the criticism made against the bench and bar that we are becoming a society that is too litigious. Not every unpleasant or irritating thing that occurs to one in life is the basis for a lawsuit and punitive damages. The fact that two parties disagree over their respective legal rights does not in every instance automatically give cause for a bad faith lawsuit. The fact that one who contracts with another takes a position that cannot legally be maintained by and of itself does not give reason to file suit. Plaintiff has been out no money and suffered little if any injury. His testimony demonstrates that he was not personally involved in the subrogation dispute to any great extent. Most of the correspondence occurred between Defendant Time and the carrier for the third party tortfeasor or with Plaintiff's attorney.

When Defendant Time advised the insurance carrier for the third party that plaintiff's policy had a subrogation clause in it, this obviously was an error. At this stage, the evidence does not show whether this error was because of negligent action on the part of Time employees or whether it was done deliberately. If Time wants to claim subrogation rights, it ought to put that language in its policy providing for that right. Regardless as to what happened, however, Plaintiff has not demonstrated that Defendant James D. Weeks caused Plaintiff any injury.

Based on the foregoing, this Court finds that there are no genuine issues of material fact in regards to Plaintiff's claims brought against Bill Benfield Insurance Agency and James D. Weeks. These Defendants are entitled to judgment as a matter of law. Their Motion to Dismiss should be granted. Therefore, these Defendants are dismissed from this action. This Court also finds that Plaintiff's Motion to Remand should be and hereby is DENIED. A separate judgment in accordance with this opinion will be entered.